# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **MICHAEL WAYNE BRISCOE,** | * |
| Plaintiff, | * |
| v. | Case No.: GJH-17-1675 |
| | * |
| **W.A. CHESTER, LLC,** | |
| | * |
| Defendant. | |
| | * |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Michael Wayne Brisco alleges that his employer, the electric utility company Defendant W.A. Chester, LLC, unlawfully demoted him because of his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. ECF No. 1. Pending before the Court is Defendant's Motion for Summary Judgment. ECF No. 38. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND[1]

Defendant hired Plaintiff, who is African-American, as a Journeyman Lineman on March 6, 2005. ECF No. 38-3 ¶ 5; ECF No. 38-4 at 29:8–9. A Journeyman Lineman's job includes connecting electricity to new homes and existing homes that storm or heavy rain have damaged or cut of their power supply. ECF No. 1 ¶ 9.[2] A Journeyman Lineman is supervised by a Foreman. ECF No. 38-4 at 6:3–7:1.

---

[1] These facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party.
[2] Although neither party provides a proper record citation for this fact, it is undisputed.

1

Defendant promoted Plaintiff to a Foreman position on March 8, 2007. ECF No. 38-3 ¶ 6. Plaintiff served as a Foreman from 2007 until Defendant demoted him back to a Journeyman Lineman position in February 2015. *Id.* ¶ 6. A Foreman is "responsible for the men" working under him. ECF No. 38-4 at 6:3–7:1.[3] Among a foreman's responsibilities are assessing the jobs, ensuring the safety of the crew, supervising the men on the crew, and communicating with upper management. *Id.* at 8:16–9:8.

Throughout his tenure as a Foreman, Plaintiff was disciplined several times. ECF No. 38-3 ¶¶ 7–13. Although Plaintiff could only recall two specific instances of discipline, he does not dispute that he received warnings on other occasions. ECF No. 38-4:11–18; ECF No. 40-1 at 7. Among raising other issues, these warnings addressed times that Plaintiff had failed to communicate with his supervisors and directed Plaintiff to take corrective action to keep his supervisors informed about his crew's status. ECF No. 38-3 ¶¶ 10–12.

After receiving several warnings, Plaintiff received another final written warning regarding his performance as a Foreman on July 28, 2014. ECF No. 38-3 ¶ 13; ECF No. 38-3 at 17–18. That final written warning stated that Plaintiff was "not maintaining a line of communication with his General Foreman" and that "[t]oo often the General Foreman [was] hearing about issues after the fact." *Id.* at 18. The warning also said:

> As a Foreman, Mike Briscoe is considered a manager. In his role he is expected to direct his work force to achieve the goals of W.A. Chester. You are expected to make job assignments, not job requests. When you request an employee to perform a task it is a point of politeness and respect. They "decline" or "refuse" it then becomes an order. Failure to follow that request/order is deemed to be gross insubordination. The penalty for which is termination. This applies to orders from you to your subordinates or orders given from Emory Kelly to you.

*Id.*

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

The warning directed Plaintiff to take corrective actions like contacting his supervisor twice a day with updates on Plaintiff's crew. *Id.* Finally, the warning explained that if Plaintiff failed to address the issues discussed, Defendant would have to re-evaluate his supervisory position. *Id.*

Plaintiff's colleague Brian Goldberg, who is Caucasian, was temporarily upgraded from Journeyman Lineman to Foreman in October 2013 and was formally promoted to the position of Foreman in January 2014. ECF No. 38-3 ¶ 14. He had previously reported to Plaintiff. ECF No. 38-4:13–21. When Mr. Goldberg was formally promoted, he and Mr. Briscoe both worked as Foremen at the Rockville yard. ECF No. 38-3 ¶ 14. Thus, the men working at Rockville yard at times reported to Plaintiff and at times reported to Mr. Goldberg. ECF No. 40-7 at 3:6–8. The supervision assignments varied day to day, depending on Defendant's needs. *Id.*

On at least three occasions between November 2014 and January 2015, Brandon Wakefield, the Union Steward, reported to Plaintiff and Mr. Goldberg various workplace issues, including twice reporting issues related to an employee named Lawrence Verrett. ECF No. 38-3 ¶ 18; *id.* at 19–22. These issues concerned safety on jobsites and Mr. Verrett's behavior. *Id.* For example, in or around December 2014, Mr. Wakefield discussed with Plaintiff and Mr. Goldberg an incident in which Mr. Verrett threatened other members of the crew. ECF No. 38-3 at 20. Although Plaintiff claims that, at the time Mr. Wakefield brought these issues to his attention, both Mr. Wakefield and Mr. Verrett were working under Mr. Goldberg's supervision, ECF No. 40-4 ¶ 18, he acknowledges that men in his crew were uncomfortable working with Mr. Verrett, that Mr. Wakefield made him aware of his concerns, and that he received at least one written note about the issues. ECF No. 38-4 at 14:22–18:14; 18:10–19:20; 19:12–21:4; 22:9–17. On each occasion when Mr. Wakefield raised an issue with Plaintiff and Mr. Goldberg, Plaintiff

responded that he would look into or take care of the issue. ECF No. 38-5 at 10:16–11:22; ECF No. 38-3 ¶ 17.

Neither Plaintiff nor Mr. Goldberg reported any of Mr. Wakefield's concerns up the chain to Ed Lavelle, Defendant's Human Resources Manager; Emory Kelley, the General Foreman; or anyone else. ECF No. 38-3 ¶ 16; *id.* at 23–24; ECF No. 38-4 at 21:15–17; ECF No. 38-4 at 13:14–14:5.

Plaintiff talked to Mr. Kelley three to four times a week in the evenings; Mr. Goldberg did not. ECF No. 38-4 24:12–25:17. Because Plaintiff took responsibility for "looking into" the issues with Mr. Verrett, Mr. Goldberg did not report any of Mr. Wakefield's concerns to Ed Lavelle, Emory Kelley, or anyone else. ECF No. 38-5 at 11:4–22.

After an incident in which Mr. Verrett cursed at and was disrespectful to Mr. Goldberg, Mr. Wakefield told Mr. Lavelle about his concerns related to Mr. Verrett's behavior and Plaintiff and Mr. Goldberg's supervision styles. ECF No. 38-3 ¶ 16. Because Mr. Lavelle concluded that Plaintiff and Mr. Goldberg had previously been made aware of issues with Mr. Verrett but had not raised them to the attention of anyone else, including him, Emory Kelley, or Don Cherba (the Project Manager), Mr. Lavelle (who is responsible for making discipline decisions) decided to discipline both Plaintiff and Mr. Goldberg. Defendant disciplined Plaintiff by demoting him to a Journeyman Lineman position and disciplined Mr. Goldberg by giving him a written warning. *Id.* ¶¶ 23, 26.

In making this decision, Mr. Lavelle considered that: (1) Plaintiff had received a final written warning in July 2014 for, in part, failing to communicate with his supervisor regarding workplace issues, and (2) in Mr. Lavelle's view, Plaintiff appeared to be actively concealing these workplace concerns by telling his colleagues he would address them and then failing to do

so. ECF No. 38-3 ¶¶ 24–25. By contrast, Mr. Lavelle gave Mr. Goldberg only a written warning because (1) Mr. Goldberg had not received any prior discipline during his time as a Foreman, (2) Mr. Goldberg was a less experienced Foreman who was taking cues from Plaintiff, and (3) Mr. Goldberg may have been lulled into inaction as a result of Plaintiff telling him that he would "look into" the concerns about Mr. Verrett.. *Id.* ¶¶ 26–29; *id.* at 24; ECF No. 38-5 at 12:9–13:10.

According to Mr. Lavelle, he did not consider Plaintiff or Mr. Goldberg's race when deciding the appropriate discipline for their failure to inform management about Mr. Verrett's behavior. ECF No. 38-2 ¶¶ 26–27. Plaintiff disagrees but cites only to his Complaint to support his view that he was demoted because of his race. ECF No. 40-1 at 7 ¶ 8. And except for the fact that he received different discipline than Mr. Goldberg who is Caucasian, Plaintiff has acknowledged that he has no reason to believe Mr. Lavelle or other decisionmakers working for Defendant harbored racist motivations. ECF No. 38-4 at 37:22–38:3; *see also id.* at 34:2–38:3. Further, in the ten years prior to Mr. Briscoe's demotion, eight other supervisors were demoted or terminated for performance reasons. ECF No. 38-3 ¶ 31. These supervisors were all Caucasian. *Id.*

Eventually, Plaintiff was re-promoted to a Foreman position on June 20, 2016. ECF No. 38-3 ¶ 32. Plaintiff still works for Defendant in that role. ECF No. 38-4 at 4:7–13.

## II.     STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir.2001) (quoting *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson,* 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). The Court may rely on only facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson,* 477 U.S. at 255.

### III. DISCUSSION

Title VII makes it illegal for an employer "to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . ." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff generally may defeat summary judgment and establish a claim for race discrimination [under Title VII] through two avenues of proof." *Holland v. Washington Homes, Inc.*, 487 F. 3d 208, 213 (4th Cir. 2007). One avenue is for the plaintiff to demonstrate "through direct or circumstantial evidence that his race was a motivating factor in the employer's adverse employment action." *Id.* (citing *Hill v. Lockheed Marlin Logistics Mgmt., Inc.*, 354 F. 3d 277, 284 (4th Cir. 2004) (en banc)). Alternatively, the plaintiff may proceed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792(1973). Where, as here, the record contains no direct evidence of discrimination, a plaintiff's Title VII claims must be analyzed under the McDonnell-Douglas burden-shifting framework. *Haynes v.*

*Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019). The McDonnell-Douglas framework also applies to discrimination cases arising under § 1981. *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) (explaining that *McDonnell Douglas* was initially developed for Title VII discrimination cases "but has since been held to apply in discrimination cases arising under § 1981").

Under *McDonnell Douglas*, a plaintiff alleging disparate treatment must first establish a *prima facie* case of discriminatory discipline, namely that (1) he is a member of a protected class; (2) the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) the disciplinary measure enforced against him was more severe than those enforced against other similarly situated employees. *See, e.g.*, *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). If an employee meets this burden to establish a *prima facie* case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). If the employer meets this burden of production, summary judgment is only appropriate if the employee cannot demonstrate that the defendant's proffered reason is pretextual. *Id.*

Here, it is undisputed that Plaintiff, as an African-American, is a member of a protected class. Further, the prohibited conduct in which he engaged—failing to keep his supervisors informed about workplace safety and conduct issues—is comparable in seriousness to misconduct of an employee outside the protected class. Specifically, Mr. Goldberg, who is Caucasian, also received reports from Mr. Wakefield, the Union Steward, about the same various workplace issues raised with Plaintiff. ECF No. 38-3 ¶ 18; *id.* at 19–22. For example, around

December 2014, Mr. Wakefield discussed with Plaintiff and Mr. Goldberg an incident in which Mr. Verrett threatened other members of the crew. ECF No. 38-3 at 20. Neither Plaintiff nor Mr. Goldberg reported any of Mr. Wakefield's concerns to management or Human Resources. ECF No. 38-3 ¶ 16; *id.* at 23–24; ECF No. 38-4 at 21:15–17; ECF No. 38-4 at 13:14–14:5. Although Defendant claims that Mr. Goldberg's conduct was not comparably serious because Plaintiff lulled Mr. Goldberg into inaction by telling him he would take care of any issues, Plaintiff has introduced evidence that at the time Mr. Wakefield brought these issues to his attention, he believed both Mr. Wakefield and Mr. Verrett were working under Mr. Goldberg's supervision. ECF No. 40-4 ¶ 18. Ultimately, the record shows that both Plaintiff and Mr. Goldberg were responsible for reporting on the status of their overlapping crew, ECF No. 40-7 at 3:6–8, and that their failure to do so is comparably serious.

Finally, the disciplinary measure enforced against Plaintiff—demotion—was more severe than the written warning received by Mr. Goldberg, a similarly situated employee. Both Plaintiff and Mr. Goldberg were employed by Defendant as Foremen at Rockville Yard when they were disciplined. ECF No. 38-3 ¶ 14. As such, they were responsible for the crew working under them, ECF No. 38-4 at 6:3–7:1, including assessing the jobs, ensuring the safety of the crew, supervising the men on the crew, and communicating with upper management, *id.* at 8:16–9:8. Additionally, Plaintiff and Mr. Goldberg supervised the same men—the men at Rockville yard at times reported to Plaintiff and at times reported to Mr. Goldberg. ECF No. 40-7 at 3:6–8 (Mr. Goldberg explaining that he was not "in charge of one set amount of people" because the people he supervised "varied day to day" depending on needs.). Further, both men dealt with the same supervisors. ECF No. 38-3 ¶ 22. Although Defendant points out that Mr. Goldberg had less experience as a Foreman and had previously worked under Plaintiff's supervision, the Fourth

Circuit has emphasized that a comparison between similar employees never involves identical circumstances. *Haynes*, 922 F.3d at 223 (citing *Cook*, 988 F.2d at 511). Taken together, the record contains sufficient evidence to support Plaintiff's *prima facie* claim.

The burden thus shifts to Defendant to offer a legitimate, non-discriminatory reason for treating Plaintiff and Mr. Goldberg differently. Defendant has met this burden of production, explaining that it disciplined Plaintiff and Mr. Goldberg differently because Plaintiff, unlike Mr. Goldberg, had previously received a final written warning in July 2014 for failing to communicate with his supervisor regarding workplace issues, and in Mr. Lavelle's view, Plaintiff appeared to be actively concealing issues from management. ECF No. 38-3 ¶¶ 24–25. In contrast, Mr. Goldberg had not received any prior discipline during his tenure as a Foreman, was less experienced than Plaintiff, and relied on Plaintiff's representation that he would resolve the issues. *Id.* ¶¶ 26–29; *id.* at 24; ECF No. 38-5 at 12:9–13:10.

Thus, the burden shifts back to Plaintiff to show that genuine disputes of material fact remain over whether Defendant's non-discriminatory reasons for disciplining Plaintiff more harshly than Mr. Goldberg are pretextual. "[T]o show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons" are "inconsistent over time, false, or based on mistakes of fact." *Haynes*, 922 F.3d at 225. If the plaintiff "offers such circumstantial evidence, the case must be decided by a trier of fact," *id.*, because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Here, however, Plaintiff has failed to offer any evidence to support his allegation that Defendant's proffered, legitimate business reasons were not its actual reasons for demoting Plaintiff while only disciplining Mr. Goldberg

with a written warning. Plaintiff does not dispute that, unlike Mr. Goldberg, he received a final written warning regarding past communication failures and directing him to take corrective actions like contacting his supervisor twice a day with updates on Plaintiff's crew. ECF No. 38-3 at 18. The warning explained that if Plaintiff failed to address the issues discussed, Defendant would have to re-evaluate his supervisory position. *Id.* Defendant further does not dispute that Mr. Wakefield brought issues related to safety and Mr. Verrett's behavior to his attention and that he failed to communicate these issues up the chain, despite telling Mr. Goldberg that he would look into the matters. ECF No. 38-5 at 10:16–11:22; ECF No. 38-3 ¶ 17. Although Plaintiff argues that Defendant has improperly blamed him for Mr. Verrett and Mr. Goldberg's misconduct, ECF No. 40-1 at 11, he does not offer any evidence disputing or explaining why he told Mr. Goldberg he would handle the workplace conduct issues rather than telling Mr. Goldberg to address the concerns on his own. Additionally, Plaintiff does not dispute that he talked to the General Foreman three to four times a week in the evenings, while Mr. Goldberg did not, ECF No. 38-4 24:12–25:17, or that Mr. Goldberg would have turned to Plaintiff for help because Plaintiff had more experience as a supervisor.

Moreover, Plaintiff has not offered any evidence that Defendant took race into consideration when it disciplined Plaintiff and Mr. Goldberg. Plaintiff cites only to his Complaint to support his view that he would not have been demoted if he were Caucasian. Yet Plaintiff "cannot create a genuine issue of material fact through mere speculation," *Beale,* 769 F.2d at 214. Instead, at this stage, the Court may rely on only facts supported in the record, not simply assertions in the pleadings. *Felty,* 818 F.2d at 1128. Furthermore, the record supports the opposite conclusion because Defendant has demonstrated that it has consistently applied its discipline policies to employees without regard to race. ECF No. 38-3 ¶ 31.

Because Plaintiff has offered no evidence that the legitimate business reasons given were not the Defendant's *true* reasons for its decision, a trier of fact could not return a verdict for Plaintiff, and Defendant is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. A separate Order shall issue.

Date: June 5, 2019    /s/_____
                      GEORGE J. HAZEL
                      United States District Judge